# JOHN D. LYNCH
## ATTORNEY AT LAW

1814 KENNEDY BOULEVARD  
UNION CITY, N.J. 07087

(201) 867-2008  
*Fax (201) 867-6654*

December 1, 2011

Honorable Warren W. Eginton  
United States District Court  
Southern District of New York  
300 Quarropas Street  
White Plains, N.Y. 10601

      Re: U.S.A. v. Francis Lopez  
         Mag. Dkt. No. 11-CR 239-03WWE

Dear Judge Eginton:

  I represent the Defendant Francis Lopez ("Defendant" or "Francis") in the above criminal matter. The Defendant submits this Sentencing Memorandum in anticipation of his sentencing scheduled for December 7, 2011. The Defendant pleaded guilty to one count of conspiracy to Commit Wire Fraud (18 U.S.C. 1349), a Class C Felony.

  The Defendant was arrested on September 1, 2010 based on the allegations set forth in the information that the defendant and others used a telephone service provider's nation intranet networks to obtain unique cellular telephone identifiers assigned to cellular telephones of the service provider's customers without authorization of the customers or the service provider's to use to make unauthorized cellular telephone calls, in violation of Title 18 USC 1343.

Francis Lopez was 25 years of age and had no prior arrest or criminal history. While he readily accepted responsibility for his action when he was arrested by the law enforcement, Francis Lopez voluntarily withdrew from the conspiracy prior to his arrest. Indeed, Francis Lopez's involvement in the conspiracy was relatively a short period of time lasting three months.

Francis Lopez cooperated with the law enforcement when he was initially arrest and after he retained private counsel.

Defendant and counsel reviewed the Presentence Report and do not file any objections. In relevant part, the PSR sets the following computation:

**Offense Level Computation: Level 30**

**Criminal History: Category 1**

## LEGAL DISCUSSION

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

Gall v. United States, 128 S.Ct. 586, 598 (2007), quoting Koon v. United States, 518 U.S. 81,113 (1996).

In United States v. Booker, 543 U.S. 220 (2005), the U.S. Supreme Court held that the mandatory nature of the Federal Sentencing Guidelines violated the Sixth Amendment because they required a judge to enhance a defendant's sentence based on facts that were neither found by a jury nor admitted by the defendant. The remedial portion of the opinion deemed the Guidelines "effectively advisory," thereby permitting

judges to tailor defendants' sentences in light of certain statutory factors. The Court, however, limited the scope of the advisory Guidelines regime by requiring judges to "consult those Guidelines and take them into account when sentencing." The Supreme Court has subsequently issued a series of decisions that begin to map out the advisory guidelines system Booker created: <u>Rita v. United States</u>, 127 S.Ct. 2456 (2007); <u>Kimbaugh v. United States</u>, 128 S.C.t 558 (2007); <u>Gall v. United States</u>, 128 S.Ct. 586 (2007); <u>Izarry v. United States</u>, 128 U.S. S.Ct. 2198 (2008).

From <u>Booker</u> through <u>Gall</u>, the Supreme Court began the process of releasing the shackles of the sentencing guidelines. The formalities of the guidelines which existed pre-<u>Booker</u> dramatically confined judges' ability to consider the human being behind the offense. The Supreme Court has made clear that the district court must make an "individualized assessment" based on all the 18 U.S.C. § 3553(a) factors. <u>Gall</u>, at 597. In order to make such an "individualized assessment," the court must understand the unique complexity of the defendant's life and role in the offense. The Court must sentence the defendant to a sentence that is "sufficient but not greater that necessary" to meet the goals of sentencing. That means the least restrictive sentence.

A. The Sentencing Framework

As the Supreme Court made held that a correct calculation of the guideline range remains the first step of the federal sentencing process. <u>Gall</u>, 128 S.C.t. at 596. In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. *220*, 125 S.Ct. 738, 160 L.Ed.2d 621 *(2005)*, and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d *103* (2d Cir.2005), the sentence to be imposed was reached

through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. In determining the particular sentence to be imposed, the court must also consider 18 U.S.C.A. § 3553(a) (l) to (7):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

In Simon v. U.S., 361 F. Supp. 2d 35 (E.D.N.Y. 2005) the Court held:

> A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15. A punishment is "just" within the meaning of the sentencing statute insofar as it fits the crime, and reflects the gravity of the defendant's conduct; a "just punishment" must also take into account the cost of the defendant's criminal conduct and the cost society must undertake to punish for the offense.

See also, U.S. v. Talley, 431 F.3d 784 (11th Cir. 2005).

As a general proposition, a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information which the judge may consider, or the source from which the information may come. Nichols v. U.S., 511 U.S. 738, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994). Although the Sentencing Guidelines should be the starting point and the initial benchmark, district courts may impose sentences within statutory limits based on appropriate consideration of all of the statutory sentencing factors, subject to appellate review for "reasonableness." 18 U.S.C.A. § 3553(a); U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A. Pepper v. U.S., 131 S. Ct. 1229 (2011).

**B. Departures**

In Kimbrough v. U.S., 128 S.Ct. 558, 564 (2007), the Supreme Court held that the district court did not abuse its discretion when it imposed lesser sentence based on its disagreement with Sentencing Commission's policy determination when the district court properly imposed below-guideline sentence to avoid unwarranted disparity. U.S. v. Irey, 2009 WL 806860 (11th Cir. March 30, 2009) (affirming 210 month sentence for man convicted of using minors to engage in sexually explicit conduct, despite a guideline range of life and statutory cap of 360 months, deferring to the district court's reliance on defendant's age, strong family support, service as peer mentor regarding substance abuse, quest for treatment of his pedophilia, and low to medium risk of recidivism). U.S. v. Hodges, 2009 WL 366231 (E.D.N.Y. Feb. 2009), the district court imposed a non-guideline sentence for 43 year old, a heroin addict, with nonviolent criminal history, who ran his own business for 10 years before relapsing in the instant offense.

This overriding principle of imposing a sentence that is sufficient <u>but not greater than necessary</u> to achieve these ends requires that the Court must also take into account 18 U.S.C. § 3582, especially when considering rehabilitation, the fourth purpose of sentencing under 3553(a)(2)(D). (Emphasis supplied) 18 U.S.C. § 3582(a) states that the court, in analyzing the 3553(a), factors must recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Here, the probation department recommends "a sentence of 97 months will satisfy the sentencing objectives." However, the probation department's recommendation is flawed because it only considers the guidelines and ignores the other equally important 3553(a) factors. Mr. Lopez asks the Court to consider the language of the Supreme Court in the case of <u>Gall v. United States</u>, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." <u>Gall v. United States</u>, 128 S.Ct. 586, 599 (2007).

In addition, the probation department does not consider the other three purposes of sentencing listed above: deterrence, protecting the public and rehabilitation. Mr. Lopez has no prior criminal convictions. The arrest and conviction for this felony will have a specific deterrent effect on Mr. Lopez and there will be no further need to protect the public because Mr. Lopez's likelihood to reoffend is very low. While we agree with the probation department that a sentence of 97 months will punish the defendant, it is respectfully urged that a sentence of 97 months will punish the defendant too severely and would be greater than necessary.

### C. Guidelines Do No Fully Implement The Statutory Objectives of Sentencing

In Rita v. U.S., 127 S.Ct. 2456, 2473 (2007), the Supreme Court held that:

"The Commission has not developed any standards or recommendations that affect sentencing ranges for many individuals' characteristics. Matters such as age, education, mental or emotional condition, employment history, lack of guidance of youth, family ties, or military, civil, charitable, or public service are not ordinarily considered under the Guidelines. See USSG Manual, §§5H.I-6, 11 and 12 (Nov 2006). These are, however, matters that § 3553(a) (1)."

The Rita Court further explained that "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve §3553(a)'s objectives." Id. at 2465. The sentencing judge may take into consideration that the Guidelines sentence should not apply "because the Guidelines sentence itself fails properly to reflect § 3553(a) consideration ..." Id. 2465. See U.S. v. Seval, 293 Fed. Appx. 834 (2d Cir. 2008). (unpub)(remanded where record shows judge did not appreciate his authority to consider that the guidelines reflect unsound judgment).

### D. Non-Guideline Sentence Is Authorized After Booker based on 3553(a) Factors Even For Grounds That Did Not Support Departure

In remanding the case back to the district court for resentencing in U.S. v. Chase, 560 F3d 828 (8th Cir. 2009), the Eight Circuit held that the Supreme Court's decisions compelled iteration that "the standards governing departures do not bind a district court when employing its discretion with respect to variances." In Chase, the Eight Circuit held that the district court should have considered the defendant's age, military services, health issues, and employment history since those factors could have warranted a downward variance under §3553(a).

In U.S. v. Howe, 543 F.3 128 (3d Cir. 2008), the Third Circuit affirmed a 2 year probation with three month of home confinement for wire fraud despite a guidelines range of 18-24 months based on the district court's finding of defendant's heartfelt remorse at sentencing despite his denial of fraudulent intent at trial and defense on blaming another, as well as the defendants' devotion to family and prior military service.

In U.S. v. Jenkins, 537 F.3d, the First Circuit affirmed a district court's variance of 62 months below the minimum 262 guideline sentence, despite denial of departure for overstated criminal history, after balancing the defendant's history as a gross recidivist against his history as a low-level, non-violent drug offender. In U.S. v. Zavala, 300 Fed. Appx, 792 *11th Cir. 2008)(affirming variance sentence of 178 months for a defendant who was not in a position to be able to provide substantial assistance concerning drug conspiracy, in light of codefendant leader who won a substantial assistance departure and a 188 month sentence; Zavala should not be punished for his lesser knowledge); U.S. v. Spigner, 416 F.3d 708 (8$_{th}$ Cir. 2005)(post-Booker remand granted for defendant for defendant convicted of selling more than 50 grams of crack, even though defense agreed not to ask for downward departures based on health, §5H1.4, because district court can still impose a sentence below the now advisory guidelines, which permit broader considerations of sentencing implications, including the §3553(a)(d) goal of providing medical care in the most effective manner); U.S. v. Cuervas-Mendoza, 2008 WL 4120060 (D. Kan. Aug. 26, 2008).

In U.S. v. Menyweather, 431 F.3d 692 (9th Cir. 2005), a fraud case, the 9th Circuit upheld an eight-level departure in a $500,000 embezzlement by the district court in light of broader, post- Booker discretion to weigh multitude of factors previously deemed "not ordinarily relevant").

**E. No Presumption Of Reasonableness**

In Nelson v. United States, 129 S.Ct. 890 (2009), the Supreme Court held that the sentencing court is not required to presume that the guidelines are reasonable. In the Nelson case, the Supreme Court overruled the Fourth Circuit and held that a federal district judge cannot presume that the sentence within the federal sentencing guidelines is reasonable. That is, the advisory federal sentencing guidelines are only one factor in a multi-party system of determining a sentence for a person convicted of a federal offense. Accordingly, a federal sentencing judge is free to sentence a defendant to whatever is reasonable, regardless of the sentenced called for under the federal sentencing guidelines.

As the Supreme Court has said, "even when a particular defendant... presents no special mitigation circumstances- no outstanding service to country or community, no unusually disadvantage childhood, no overstated criminal history score, no post-offense rehabilitation a sentencing court may nonetheless vary downward from the advisory guideline range. The only fact necessary to justify such a variance is the sentencing court's disagreement with the guidelines. Spears v. U.S. ,129 S,Ct. 840 (2009). Under

Booker, sentencing courts are permitted to impose a non-guideline sentence based on not just individualized mitigating or aggravating circumstances, but also when the guideline sentence fails properly to reflect considerations, reflects "unsound judgment" or when "the case warrants a different sentence regardless." Rita v. United States, 127 S.Ct 2456, 2465 (2007).

**F. Defendant Cooperated With Authorities Absence of §5K1.1 Motion**

After Booker and Rita, defendant's cooperation reflects a reduced likelihood of recidivism and is a beneficial part of his history and character supporting a nonguideline sentence under §3553(a) even where the government does not file a §5k motion. See U.S. v. Fernandez, 443 F.3d 19 (2d Cir. 2006)(a judge must consider "the history and characteristic of the defendant" and should consider that a defendant made efforts to cooperate, even if those efforts did not yield a government motion for a departure. U.S. v. Lazenby, 439 F.3d 928, 933-34 (8th Cir. 2006)(noting that Booker made the prosecution's determination of the cooperation factor less controlling, and holding that district court failed to take Booker's change into account). U.S. v. Doe, 213 Fed Appx. 660,663 (10th Cir. Jan. 12, 2007)(holding that district court should address cooperation as part of its §3553(a) analysis even in the absence of a 5K1.1 motion when raised by the defendant); U.S. v. Ramos, 2008 WL 2062341, at *3(E.D.Wis. 2008)(noting the ability to consider cooperation with the government as evidence of defendant's character under

§3553(a) beyond a reduction under §3E1.1, even in the absence of a §5K motion from the prosecution.); U.S. v. Cruz, 2008 WL 4501951, at *3 (E.D. Wis. 2008)(same); U.S. v. Murrary, 2005 WL 1200185 (S.D.N.Y. May 20, 2005(unpub.)(fact that defendant testified for government at a time when he had nothing to gain provides support for his genuine contrition). U.S. v. Hubbard, 369 F.Supp. 2d 146, 150 (D.Mass. 2005) (suggesting court can correct for government's bad faith in not making §3553(a) (2) (C).

Here, Francis Lopez immediately cooperated with law enforcement when he was arrested after he was advised of his right to remain silent. Francis Lopez honestly and completely disclosed his own personal involvement in the crime and agreed to cooperate.

**G. Age of Defendant**

Under the advisory guidelines, age is "ordinarily" not relevant pursuant to USSG§ 5HI.I but may be so in unusual cases or in combination with other factors. Yet, the Commission has found "recidivism rates declines relatively consistently as age increases." See U.S.. Sentencing Comm 'n Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines. Consequently, a sentencing court may consider defendant's age under § 3553(a).

Gall v. U.S. 128 S.Ct. 586, 593 (2007)(affirming sentence of probation, in part, for defendant's age at the time of the offense conduct); U.S. v. Dusenberry, 9 F.3d 110 (6th Cir. 1993)(downward departure granted due to defendant's age and medical condition -removal of both kidneys requiring dialysis three times a week.); U.S. v. Clark, 289 Fed. Appx. 44 (5 th Cir. 2008); U.S. v. Polito, 215 Fed. Appx. 354, 357 (5th Cir. 2007) (per

curium) (upholding sentence of probation in child pornography case when use began adolescence).

Here, Francis Lopez was merely 25 years old when he was arrested. His youth should be taken into account by this Court in evaluating his request for a downward departure.

**H. Aberrant Conduct**

The Sentencing Reform Act, 28 U.S.C. 994(j) directed the Sentencing Commission to consider probation for first offenders not convicted of serious offenses. It ordered the Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." Id. In 2000, the Sentencing Commission imposed limitations on what is to be considered aberrant behavior, U.S.S.G. § 5K2.20. Departure for aberrant behavior is authorized for" single criminal occurrence or single criminal transaction (which is somewhat broader than a single act) and is limited to offenses (A) committed without significant planning (B) of limited duration; and (C) and that represented a marked deviation by the defendant from otherwise law-abiding life." §5K2.20 Departure is precluded if (1) the offense serious bodily injury or death; (2) use or discharge of a firearm; (3) a "serious drug trafficking offense" or (4) the defendant has more than one criminal history point. §5K2.20(c). Congress directly amended, for example, §5K2.0 with the Feeney Amendment to the PROTECT Act, eliminating departure in cases involving kidnapping minors, sex trafficking of children, sexual abuse, and sexual exploitation of

children. Effective October 27, 2003, departure was also disallowed for "serious drug trafficking offenses, including any offense with a statutory mandatory minimum regardless of whether the defendant meets the safety valve at § 5C1.2, 18 U.S.C. § 3553(t). See §5K2.20 comment. (n.l.). If the defendant has "any other significant prior criminal behavior "regardless of whether it resulted in conviction. §5K2.20 comment (n.l). A fraud scheme is generally ineligible for an aberrant behavior departure. §5K2.20 comment (n.2).

After Booker and Rita, however, these restrictions are advisory only. District Courts have discretion to consider the individual circumstances of the defendant as part of their analysis 3553(a) and under Kimbrough and Spears, to reject the guidelines on policy grounds. In U.S. v. Howe, 543 F.3d 128 (3rd Cir. 2008), the Third Circuit affirmed a probation sentence and temporary home conferment for wire fraud despite an 18-24 month guidelines range, where the district court fold the defendant's crime was an "isolated mistake" in the context of defendant's otherwise long and upstanding life, despite the government's assertion defendant waged a two year campaign to cover up a six figure fraud on the Air Force.); U.S. v. Castellano, 355 F.3d 56, 59 (2d Cir. 2003)("Under Guidelines, absence or presence of spontaneity alone never determines whether criminal conduct is aberrant behavior.")

U.S v. Hadash, 408 F.3d 1080. 1084 (8th Cir. 2005)(six level downward departure upheld where district court concluded that defendant was "law abiding citizen, who [did] an incredibly dumb thing" and "was not the type of defendant the guidelines section was designed to punish."); U.S. v. Davis, 2008 WL 2329290 (S.D.N.Y. June 5, 2008)(time

served imposed for possessing a sawed-off shotgun, which appeared to have been prompted by economic pressures of unemployment by a first-time offender, who had throughout his 15 year-year marriage worked at lots of jobs to get education for his six children's care was attested to by a school teacher and a pediatrician).

Here, Francis Lopez has never been involved in another other criminal activity. Indeed, the criminal activity in this case was brief in duration (three months) and aberrant. The pre-sentence report reflects that Mr. Lopez has been "devastated" by this incident, not solely by the legal consequences he faces, but because of his recognition that he greatly let down his family.

**I. Youthful Immaturity**

In <u>Roger v Simmons,</u> 125 S.Ct. 1183 (2005), the Supreme Court held that "today our society views juvenile, in the words Atkins used respecting the mentally retarded, as categorically less culpable than the average criminal... [a]lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered action as and decisions ...The susceptibility of juveniles to immature and irresponsible behavior means "their irresponsible conduct is not as morally reprehensible as that of an adult .... [t]he relevance of youth as a mitigating factor derives from the fact that the signature qualifies of youth are transient; as individual mature, the impetuousness and recklessness that may dominate in younger years can subside.").

Francis Lopez's crime was the product of youthful immaturity and extremely bad judgment. Francis Lopez has found another job and is thriving. His aberrant bad judgment was nothing more than youthful immaturity and stupidity, and the chance of recidivism is virtually nil.

**J. Disparity in Sentencing**

As it relates to the present case, perhaps the most pertinent section of 18 U.S.C. 3553 that would merit a downward departure for defendant, Francis Lopez is (a)(6), which reads:

> "The need to avoid unwarranted sentence disparities
> among defendants with similar records who have
> been found guilty of similar conduct;"

This provision necessitates comparison to the sentence handed down in this District to Raj Rajaratnam. In a case that received international notoriety and attention, Rajaratnam was the hedge fund manager of the Galleon Group. In May, 2011 a federal jury found him guilty on 14 counts of securities fraud and conspiracy for running a large insider trading scheme for six years. Rajatnaram was said to have personally profited from the enterprise to the sum of <u>63 million dollars.</u>

While the charges carried a range of 15 ½ to 19 ½ years in jail, on October 12, 2011, the defendant, categorized by the Government as "a billion dollar force of deception and corruption on Wall Street", received a sentence of 11 years in federal prison and a fine of 53.4 million dollars.

Ironically, 11 years is the upper limit of the guideline range for Francis Lopez, even with the reduction awarded for acknowledgement of responsibility, and with the amount of loss attributable to Lopez by the Government at $499,220.20.

Francis Lopez does not cavalierly dismiss the seriousness of his action. Most respectfully, however, for Lopez and Rajatnaram, even conceptually, to belong in the same category for punishment is incomprehensible. Rajatnaram's fine alone is over 100 times the loss

attributed to Lopez.  The personal gain of Rajatnaman, 93.8 million dollars, compared to Lopez's several thousand dollars is far beyond comparability.

The damage done by Raj Rajatnaram is so disproportionately greater than that of Lopez that a realistic analogy cannot be drawn.  On this issue alone, a significant downward departure is warranted.

For all the foregoing reasons, Defendant Francis Lopez respectfully requests that the Court grant a downward departure and impose a just and reasonable sentence.

Respectfully submitted,

_____
JOHN D. LYNCH, ESQ.

JDL:kd